BENNINGTON,        S .IUEL C. RAYMOND vs. HOSEA WILLIAMS & SON.
February,
1835.        When a debtor procures a person to purchase a note against him, under a con-
tract to pay a specified sum, and after the purchase, wholly denies the agree-
ment, and refuses to pay the same, or carry the agreement into effect, he
cannot set up this agreement in defence to an action brought by the purchas-
er, as endorsee of the payee of the note.

This was an action on a promissory note, made by the defend-
ant, and endorsed by Charter & Webb to the plaintiff, and came
up upon the following bill of exceptions:

This cause was tried before the jury upon the special count in
the declaration.—Plea, general issue. The plaintiff waived the
common count.

The plaintiff produced and read to the jury the note described
in his declaration, endorsed by Charter & Webb to him. The ex-
ecution of said note by the defendants was admitted.

Humphrey Richardson, jr. testified, that the names, Charter &
Webb, written on the back of said note, was the hand-writing of
Charter, one of said firm of Charter & Webb, to whom said note
was payable.

Albert R. Raymond testified, that in the fall of 1829, the plain-
tiff (who then resided at Bennington, being at Manchester, where
said Albert resided,) left the note with him, with directions to call
on the defendants for a confession on said note, and soon after the

witness called on the defendants, computed the interest on the note, and requested them to give a judgment on it. The defendants replied, they would see the plaintiff, as they were going to Benning- ton, and would confess judgment on the note, or settle it in some other way.

The defendants, to support the issue on their part, called Mosley Hall, who testified, that in the fall of 1829, at the request of defendants, he went to Bennington to see plaintiff in reference to the note;—that he stated to the plaintiff the defendants claimed he was requested by them to procure the said note of Charter & Webb, under an agreement that he was to have the money advanced with interest, and a reasonable sum for his trouble;—and that the plaintiff denied this, and replies he was to have fifty cents on the dollar for all notes taken up for the defendants in New-York; and that it was so understood and agreed between himself and the defendants, before he took said note of Charter & Webb; and that said note of Charter & Webb was purchased under an express agreement that he was to have fifty cents on the dollar. Hall further testified, that in the fall of 1830, he was present at a conversation between the plaintiff and the said Hosea;—the said Hosea claimed and stated to said plaintiff, that said note was taken up for his benefit, and under an agreement that the said plaintiff was to be repaid the money advanced and interest, with a reasonable sum for his trouble;—that the plaintiff said it was not so, and replied he was to have fifty cents on the dollar;—that said Hosea offered to pay the plaintiff the amount advanced by him for the note and interest, and a reasonable compensation for his trouble; and to this the plaintiff replied, he should not give up said note unless the said Hosea paid fifty cents on the dollar. The witness further testified, that the defendant, H. Williams, had told him, that he requested Judge Hodges to buy the note for him. I did not know, when Hodges went to New-York, that Raymond had purchased the note.

Plyn A. Williams testified, that in 1831, he stated to the plaintiff, the defendants claimed he was to recover for getting said note of Charter & Webb the money by him advanced, with interest, and pay for his trouble; and that the plaintiff replied, it was agreed between the plaintiff and the said Hosea, previous to the time when he took up said note, he was to have fifty cents on the dollar for all notes purchased by him for the defendants in New-York; and that he was entitled to that amount on the Charter & Webb note. And further, that the said Hosea Williams failed in the fall of 1825,

BENNINGTON,
February,
1835.
──────
Raymond
*vs.*
Williams & Son

and that his father has denied the agreement to pay fifty cents on the dollar, and has refused to pay the same. Further, that Charter & Webb failed in the fall of 1825 ;—that in the following winter, Webb left New-York ; and that in February, 1826, the witness received a letter from Webb, stating he and the said Charter had dissolved their connexion in business.

Norris Dodge testified, that he was acquainted with the firm of Charter & Webb—had transacted business with them. Charter & *W*ebb both are relatives of the witness. The said Charter & Webb failed in the fall of 1825, and have not been in business since ; and said Charter inquired of witness as to the probability of defendants' paying said note ; and the witness informed him, the defendants had failed ; and the said Charter replied, he knew it, and did not consider said note of much value.

Henry Hodges testified, that he was acquainted with the firm of Charter & Webb, while in business—was in New-York in the spring of 1826, and said Charter & Webb were not then doing business ; and that he saw Charter there at the counting-room of Charter & Webb ;—that in January, 1826, received a letter from Charter & Webb, proposing to take fifty cents on the dollar on the note, if it would be done soon.

Whereupon, the court decided, that as none of the facts testified to were denied by either party, on this testimony the plaintiff was entitled by law to a verdict, and they should so charge the jury ;—that there was no evidence tending to prove that the plaintiff purchased the note on the consideration that the defendants were to pay him a reasonable compensation for his trouble, and what he paid ; as the only evidence to this effect was the declaration of the defendants, which was denied by the plaintiff ;—that if the jury should believe, from the testimony, that the plaintiff agreed to purchase the note for the defendants, and was to have fifty cents on the dollar, yet as the defendants had refused to comply with that agreement and pay the fifty cents, denying that there was such an agreement, and claiming a different one, the plaintiff, as endorsee, was entitled to recover the amount of the note and interest.

The court further decided, that there was no evidence of the dissolution of the partnership between Charter & Webb, before the note was endorsed to the plaintiff, by which the jury could infer that Charter had no right to endorse the note.

A verdict was taken for the plaintiff.

Exceptions taken by defendants.

*Mr. Bennet, for defendants.*—I. The evidence shows that <span>BENNINGTON,<br/>*February,*<br/>1835.</span> Raymond bought the note in question under an express agreement, previously made with the defendants, that they should pay him one moiety of the same, or fifty cents on the dollar.

Raymond<br/>*vs.*<br/>Williams & Son

II. The court charged the jury, that though they should find this agreement proved, yet the plaintiff could maintain an action as *endorsee* of the note; and inasmuch as defendants had denied this agreement, and claimed a different one to have been made, the plaintiff was entitled to recover of the defendants the full amount of the note, and interest.

This charge, we think, ought not to be sustained, for the following reasons :

1. A note once discharged and paid, is *functus officio*, and cannot, after that, be negotiated.—3 Mass. R. 557, *Blake vs. Sewell.* 5 Mass. R. 512, *Baker vs. Wheaton.* 8 Mass. R. 466, *Boylston vs. Green.*

2. Under this agreement, Raymond was purchasing this note for the benefit of the defendants, at least for one moiety of the note, and as their agent.

3. The agreement, as disclosed by Raymond, was a valid one in the law, and had the action been predicated on it, it would have given a just verdict of damages.

4. It is difficult for me to perceive how the defendants' denying the *special agreement* claimed by the plaintiff, and insisting upon a different one, and declining to pay according to the special agreement, as insisted upon by the plaintiff, can have a *retroactive operation,* and resuscitate paper that was before that *functus officio,* and give effect to an endorsement which before that time was a nullity.

5. If Raymond and Williams did not think alike as to the terms of the *special agreement,* (both claiming one to have been made,) Raymond should have brought his action so as to have tried the right of the parties under the special agreement.

6. Raymond is guilty of *fraud* in procuring the note to be endorsed by Charter & Webb, and thus attempting to enforce the collection of the whole note of the defendants.

Though Williams & Son may have received of Charter & Webb the full consideration of the note, yet this is no reason why Raymond should receive a compensation to twice the amount of his agreement, and in direct contravention of the same.

30

BENNINGTON,
February,
1835.

Raymond
vs.
Williams & Son

It seems ·from the case, that Williams & Son failed in the fall of 1825, and that Charter &. Webb considered the note of little value.

7. The charge of the court violates the rule of damages as claimed by the *special agreement*, does injustice to my client, and introduces the cheering doctrine of giving two for one, whereby the plaintiff obtains twice as much as he pretends to have a right to claim.

III. The court also decided that there was no evidence of the dissolution of the partnership of Charter & Webb, before the en= dorsement of the note to the plaintiff.

1. There was evidence to show that Charter & Webb failed in the fall of 1825, and have not been in business since that time ;— that in the winter following, Webb left New-York; and in February, 1826, wrote to one of the witnesses, stating among other things, that he and Charter had dissolved, &c.

The failure of a firm, and a consequent discontinuance of busi= ness, is *ipso facto* a dissolution.—3 Kent's Com. 27, last ed.

The acts and declarations of Charter & Webb, or either of them, while the note was in their hands, and before it was endorsed, are evidence against the endorsee.

The plaintiff offered no evidence to show at what time the note was endorsed, and it was incumbent upon him to show that it was previous to the dissolution.

Again, it seems that in January, 1826, Charter & Webb had the note in their possession, and were then proposing to negotiate a sale ; and this was subsequent to the failure of Charter & Webb.

*Mr. Isham for plaintiff.*—The charge of the court was correct, " that there was no evidence tending to prove that the plaintiff pur= chased this note, on the consideration that the defendants were to pay a reasonable compensation for his trouble . and what he paid." Neither was there any evidence tending to prove a contract, that the plaintiff was to receive fifty cents on the dollar : In each case, there was the declarations of one of the parties ; but in every in= stance, they were denied by the other.

The facts disclosed by the testimony of A. R. Raymond, are in= consistent with such an arrangement ;—that in the fall of 1829, this note was presented to the defendants, interest computed, and a promise on their part " to give a judgment on the note, or settle it in some other way." This is a recognition of· the right of the plain= tiff, as endorsee, to recover the amount of the note.

If there was such an agreement that he was to receive 50 cents

on the dollar, the defendants are estopped to claim the benefit of it, as they have refused to comply with it, denying its existence, and claiming a different one.—2 Maul and Selwin, 120, *Cranley* vs. *Hillary.*

Such an agreement to purchase and compound with the defendants, is without consideration and void.—2 H. Blac. 317, *Lynn* vs. *Bruce.* 3 Vt. R. 334, *Seele* vs. *Spencer.*

There was no evidence to show that this note was endorsed to the plaintiff after the dissolution of the firm of Charter & Webb, or to show any of those facts necessary to constitute such defence, to wit, dissolution of the firm; notice of such dissolution, personally to the former correspondents, and publication to those who were not their correspondents, and the endorsement subsequent to such dissolution and notice.—1 Wheat. Sel. 230. 3 Day Rep. 353, *Mowall* vs. *Howland.* 1 Esp. N. P. C. 371, *Godfrey* vs. *Trumbull.*

In Wheat. Sel. p. 266, it is said that if a bill is drawn payable to A and B, who are not partners, if the bill be endorsed by A, in the name of himself and B, and this bill be afterwards accepted by the drawee, it is not competent for him to object to the regularity of this endorsement. So in this case ; the promise, as testified to by Raymond, would amount to an acceptance of a bill ; and being made after the endorsement, will equally preclude the defendants from objecting to the regularity of this endorsement.—1 Camp. Rep. 83, *Jones et al* vs. *Radford,* (note.)—*Ib.* 82, *Porthouse* vs. *Parker et al.*—*Ib.* 485, *Cotes* vs. *Davis.*

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The endorsement of the note in this case, was undoubtedly *prima facie* evidence of the title of the plaintiff. There was no evidence that the firm of Charter & Webb was actually dissolved. They may have stopped business so far as it respects selling goods, and the partnership have continued as to all the debts due to, or from the firm. It appears that after they had stopped their mercantile business, they kept a counting-room in New-York, and wrote a letter to one of their correspondents in the country, in relation to this claim against these defendants. The question then is, was the note paid prior to the endorsement, or had it ever been, in fact, paid by the defendants, who received the consideration, and executed the note ? There is no evidence, nor is there any claim on the part of the defendants, that they ever have parted with any property, or in point of fact, paid any sum whatever on the note. They only claim, that if the plaintiff purchased

BENNINGTON,
*February,*
1835.

Raymond
*vs.*
Williams & Son

BENNINGTON,
February,
1835.

Raymond
vs.
Williams & Son

the note as their agent, that it was thereby paid. The correctness of this position is very questionable. We should pause, before we should determine, that a debtor may procure an agent to buy in his debts at a discount, without furnishing him any means therefor, and then contend that such purchase is a payment. The idea of a purchase is wholly at variance with a claim of payment; and it appears by the case, that the defendants never contended for any thing except that the plaintiff was to purchase the note as their agent.

In the case under consideration however, it appears that there was no evidence of any agreement for the purchase. The only testimony in the case, was the declaration of the parties. What was stated by the defendants, was wholly denied by the plaintiff; and the statement of the plaintiff was as strenuously denied by the defendants. The agreement contended for by the defendants, in the presence of the witness, Mr. Hall, was denied by the plaintiff, and there was no other evidence offered of any such agreement.— The statement of a party, in the presence of another, not acceded to by him but denied, cannot be considered as any evidence of the facts stated. The defendants can claim nothing from the agreement stated by the plaintiff, when at the same time the statement was made, he denied it so positively. There was therefore no evidence in this case, which would have warranted or justifiend a jury in finding a verdict for the defendants. In another view of this case, it appears that the defendants were without defence. If the agreement had been proved to have been as claimed by the plaintiff, in the presence of the witness, to wit, that he had purchased this note, on request of the defendants, under an agreement that he was to be paid fifty cents on the dollar, and waiving any inquiry whether such an agreement would have been considered as made upon a valid consideration, yet it is very clear that the defendants, to have availed themselves of any benefit from such an agreement, must have complied with the terms of it. Such was the decision of the court in the case of *Cranby* vs. *Hillary*, 2 Maul & Sel. 120, and such was the opinion of Lord Elenborough in *Boothley et al.* us. *Sowder*, 3 Camp. 174. In the case under consideration, it appears that the defendants have not only expressly refused to perform any such agreement as was stated by the plaintiff, but have expressly repudiated it, and denied that any such one was made. With what propriety can they claim now any benefit of any such agreement, if there ever was one made? The defendants in every point of view were wholly without defence, and the county court

were right in deciding that there was no evidence tending to prove that the plaintiff purchased the note on the consideration stated by the defendants, and that the defendants could claim no benefit of the agreement, if any was made, that the plaintiff was to purchase the note, and have fifty cents on the dollar, as the defendants had not only at all times denied any such agreement, but had also refused to comply with the same. The plaintiff was entitled to recover the amount of his note and the interest, and the jury were rightly instructed. ·

The judgment of the county court is therefore affirmed.